IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LEADERSHIP INSTITUTE and
TURNING POINT USA at the UNIVERSITY
OF NEW MEXICO,

    Plaintiffs,

v.                                                Case No. 1:24-cv-187-DHU-JMR

GARNETT STOKES, in her official capacity
as President of the University of New Mexico,

JOSEPH SILVA, in his official capacity as
Chief of Police of the University of New
Mexico Police Department,

TIMOTHY STUMP, in his official capacity as
Lieutenant of the University of New Mexico
Police Department,

CHERYL WALLACE, in her official capacity
as Director of the Student Union Building at
the University of New Mexico,

DENNIS ARMIJO, in his official capacity as
Assistant Director of the Student Union
Building at the University of New Mexico, and

RYAN LINDQUIST, in his official capacity as
Director of the Student Activities Center at the
University of New Mexico,

Defendants.

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

       Defendants Garnett Stokes, in her official capacity as President of the University of New

Mexico, Joseph Silva, in his official capacity as Chief of Police of the University of New Mexico

Police Department, Timothy Stump, in his official capacity as Lieutenant of the University of New

Mexico Police Department, Cheryl Wallace, in her official capacity as Director of the Student

Union Building at the University of New Mexico, Dennis Armijo, in his official capacity as Assistant Director of the Student Union Building at the University of New Mexico, and Ryan Lindquist, in his official capacity as Director of the Student Activities Center at the University of New Mexico, (collectively "UNM") hereby respond in opposition to Plaintiffs' Motion for Preliminary Injunction filed February 29, 2024 [ECF 5] ("MPI").

## I.  STANDARD FOR PRELIMINARY INJUNCTION

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1246 (10th Cir. 2017) (internal quotation marks omitted). As Plaintiffs correctly note, to obtain a preliminary injunction, Plaintiffs must demonstrate that (1) they will be irreparably harmed if the preliminary injunction is denied; (2) the threatened injury to them outweighs any injury the opposing party would suffer under the preliminary injunction; (3) the injunction is not adverse to the public interest; and (4) Plaintiffs have a substantial likelihood of success on the merits.  MPI at 9.  However, Plaintiffs assertion that "[i]f a speaker can show that a First Amendment violation likely occurred, the other factors should weigh in the speaker's favor" of granting injunctive relief is completely wrong.  [MPI, p. 9].

Plaintiffs urge the Court to apply a "modified test," that has not been the law in New Mexico for almost eight years.  *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016).  In *Jewell*, the plaintiff argued that a district court erred by failing to apply the "modified test" under which a plaintiff that has satisfied the first three prongs for an injunction can "meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *Id*.  The *Jewell* Court directly rejected this

2

argument, noting that the Tenth Circuit's "modified test is inconsistent with," and therefore abrogated by, "the Supreme Court's recent decision in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)." *Id.*; *see also Legacy Church, Inc. v. Kunkel*, 455 F. Supp. 3d 1100, 1163 (D.N.M. 2020). The Tenth Circuit could not have been any clearer: "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible." *Id.* Accordingly, Plaintiffs are not entitled to an injunction unless they affirmatively demonstrate all four elements of the test for injunctive relief.

Plaintiffs do not address the fact that the injunction they seek is disfavored under Tenth Circuit law. The Tenth Circuit has identified three "types of specifically disfavored preliminary injunctions: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005) (*internal quotation marks omitted*). Disfavored preliminary injunctions "require a stronger showing by the movant" than other injunctions. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Trial Lawyers College v. Gerry Spence Trial Lawyers College*, 23 F.4th 1262, 1274 (10th Cir. 2022) ("the movant's burden is greater" when the requested injunction is disfavored). Here, the injunction Plaintiffs seek is disfavored because it attempts to alter the status quo and the requested relief affords the movant all the relief that it could recover at the conclusion of a full trial on the merits.

First, the preliminary injunction Plaintiffs request would unquestionably alter the status quo. Plaintiffs do not address this element in the MPI and, thus, appear to have conceded they cannot meet this element. *See SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100 (10th Cir. 1991), *overruled per curiam on other grounds by O Centro Espirita Beneficente Uniao do Vegegal*

3

*v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc), *aff'd sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegegal*, 546 U.S. 418 (2006). As the Tenth Circuit explained, "the status quo is not defined by the parties' existing legal rights; it is defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* Plaintiffs seek to change that status quo by requesting an injunction that declares provisions of UNM's Policy 2230 to be unconstitutional. Further, Plaintiffs request this Court order UNM to cease enforcement of its policies and the collection of security fees from TP-UNM. This would undoubtedly alter the status quo. Here, the status quo is UNM's application and enforcement of its policies. In addition, UNM has charged TP-UNM, along with countless other organizations, security fees for special events in the past which have been paid. *See* Stump Declaration, ¶¶ 7-9. Accordingly, the injunction Plaintiffs seek would change the status quo and is thus disfavored for this reason as well.

Further, Plaintiffs' requested preliminary injunction seeks all the relief they could recover at the conclusion of a full trial on the merits. This is an attempt to short circuit the judicial process and skip to the ultimate result. "[T]he limited purpose of a preliminary injunction 'is merely to preserve the relative positions of the parties until a trial on the merits can be held . . . '" *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005)(quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Plaintiffs reach too far; by requesting such a preliminary injunction, they ask this Court to enter a declaratory judgment or advisory opinion regarding the constitutionality of UNM's security policy, thereby affording the Plaintiffs all the relief that they could recover at the conclusion of a full trial on the merits, without presenting evidence, without a trial and without addressing standing and other legal issues that are replete in the Complaint.

4

## II.   POINTS AND AUTHORITIES

### A.   Plaintiff Leadership Institute ("LI") Does Not Have Standing to Seek the Requested Injunction.

Article III of the Constitution requires courts to only adjudicate actual cases and controversies. If there is not an actual case or controversy, the federal court lacks jurisdiction. There are three immutable elements of constitutional standing: (1) injury in fact, (2) causation, and (3) redressability. *Steel Company v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998); *Bennet v. Spear*, 520 U.S. 154, 162 (1997); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Wyoming ex rel. Crank v. United States,* 539 F.3d 1236, 1241 (10th Cir. 2008).

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Defenders of Wildlife*, 504 U.S. at 560–61 (quotations, ellipsis, brackets, and citations omitted).

TP-UNM and LI, as the parties invoking federal jurisdiction, bear the burden to prove standing. *Id.* at 561; *Renne v. Geary*, 501 U.S. 312, 316 (1991); *Marcus v. Kansas Dept. of Revenue*, 170 F.3d 1305, 1309 (10th Cir.1999) ("Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." (internal quotations omitted)). The Tenth Circuit requires that a plaintiff "com[e] forward with evidence of specific facts which prove standing." *Bear Lodge Multiple Use Ass'n v. Babbit*, 175 F.3d 814, 821 (10th Cir. 1999). Article III's requirement of an actual case-or-controversy demands more than generalized concerns; instead, a plaintiff must

5

provide "a factual showing of perceptible harm." *Defenders of Wildlife*, 504 U.S. at 566. TP-UNM has not done so. Alleging constitutional violation does not make it so for purposes of standing.

LI does not have standing to seek an injunction against UNM, as it does not have a contractual relationship with UNM. Plaintiffs admitted in the MPI that LI simply agreed to pay reasonable security costs on behalf of TP-UNM. [MPI, p. 7].[1]

### B.     Plaintiffs Cannot Demonstrate Irreparable Harm.

The Plaintiffs' identified injury is a violation of their constitutional rights. The irreparable-harm prong's overarching inquiry "compares (i) what would happen if the preliminary injunction were not granted; with (ii) what would happen if the preliminary injunction were granted; and then (iii) asks whether the difference between (i) and (ii) is irreparable." *Jewell*, 839 F.3d at 1276. A party seeking a preliminary injunction "must first demonstrate that [irreparable] injury is likely before the other [traditional equitable] requirements will be considered." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (*quotation omitted*). "Absent a showing of irreparable harm, the Court need not reach the other factors of the inquiry because [the] plaintiff does not provide sufficient support for issuance of injunctive relief." *May v. U.S. Bank, N.A.*, No. 13-cv-1621, 2013 WL 3200473, at *2 (D. Colo. June 24, 2013). This is because "[t]he purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *DTC Energy*, 912 F.3d at 1270 (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005)). For this reason, "allegations of past harm are inadequate to establish irreparable harm." *Donahue v. Kan. Bd. of Educ.*, No. 18-3130, 2019 WL 2359370, at *2 (10th Cir. June 4, 2019). Tenth Circuit decisions have linked the "irreparable injury" inquiry to the "likelihood of success" inquiry, holding that a plaintiff who cannot

---

[1] Leadership Institute's ("LI") standing to seek an injunction against UNM will be further addressed in a motion to strike to be filed separately from Defendants' Response to the MPI.

demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm. *See Schrier v. Univ. Of Colo.*, 427 F.3d 1253, 1266 (10th Cir. 2005) ("Dr. Schrier has failed to demonstrate the requisite likelihood of success on his free speech and academic freedom claims. As a result, he is not entitled to a presumption of irreparable injury."). In *Heideman v. S. Salt Lake City*, 348 F.3d 1182 (10th Cir. 2003), for example, the Tenth Circuit held that a mere assertion that the harm implicates First Amendment claims is insufficient, as "[i]t is necessary, however, to consider the specific character of the First Amendment claim." 348 F.3d at 1190. The fact that UNM has not attempted to collect the security fees owed by TP-UNM is evidence that they have not suffered irreparable harm. *See* Stump Declaration, ¶ 14. TP-UNM has not attempted to schedule further public speaking events through UNM after it hosted the Riley Gaines event on October 4, 2023. Lindquist Declaration, ¶ 7; Wallace Declaration, ¶ 5. However, TP-UNM continues to schedule and host weekly on-campus meetings in the Student Union Building ("SUB") with its members. Wallace Declaration, ¶ 5. UNM has never denied a request by TP-UNM to reserve space on-campus for its weekly meetings despite the fact that TP-UNM has not paid the debt owed on security fees. *See* Wallace Declaration, ¶¶ 4-6.

Plaintiffs seek a preliminary injunction requiring declaration that provisions of UNM's policies regarding security fees are unconstitutional. Given the fact that there has been no enforcement or attempts to collect TP-UNM's debt, Plaintiffs have suffered no harm and there is no credible threat of harm in the future. Plaintiffs cannot satisfy the irreparable injury requirement, and thus, are not entitled to a preliminary injunction against UNM.

Plaintiffs have also failed to provide any evidence that they are likely to sustain irreparable injury in the future. To obtain a preliminary injunction based on anticipated future injuries, it is not enough that future irreparable injury be *possible*. "[I]rreparable injury [must be] *likely* in the

7

absence of an injunction." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22 (2008). A plaintiff "must demonstrate a significant risk that he or she will experience" irreparable harm. *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (*quotation omitted*). "[A] plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (*quotation and brackets omitted*). Plaintiffs are not at significant risk of irreparable harm, as they still have the ability to schedule events on campus despite the fact that they have not paid past security fees, and thus, their speech has not been chilled by UNM's policies. *See* Stump Declaration, ¶ 14.

Further, TP-UNM hosted several events in the past and continued to do so even after being billed security fees similar in amount to the fee they now claim is unconstitutional. On September 15, 2022, TP-UNM hosted an on-campus event with speaker Tomi Lahren. Stump Declaration, ¶ 7. Based on the factors in Policy 2230, UNMPD staffed that event with 4 sworn officers and one supervisor. *Id*, ¶ 7. That level of security proved to be inadequate and protestors stormed the event, resulting in the emergency evacuation of almost 200 people, placing officers and the public in a dangerous position, property damage and multiple arrests. *Id*, ¶ 7. That experience informed UNMPD and TP-UNM of the heightened security risk of events sponsored by TP-UNM on campus. *Id*, ¶ 7. TP-UNM paid the security invoice for $1,109. 40 for the Lahren event and hosted another event the next month at UNM. *Id*, ¶ 7.

TP-UNM went on to host further events after paying the security invoice for the Lahren event. *See Id*, ¶ 8. When TP-UNM hosted speaker Ian Haworth on October 20, 2022, TP-UNM demanded more security for that event than was provided for the Lahren event. *Id*, ¶ 8. UNMPD provided more security based on the safety assessment and TP-UNM's request. *Id*, ¶ 8. There

were protestors at the Haworth event and three arrests were made by the sworn officers staffing the Haworth event. *Id*, ¶ 8. TP-UNM paid the security invoice for $6502.50 for the Haworth event and hosted another event the next month at UNM. *Id*, ¶ 8.

On November 30, 2022, TP-UNM hosted speaker Charlie Kirk, the Founder and Executive Director of Turning Point USA, at UNM. *Id*, ¶ 9. UNMPD provided security and TP-UNM paid the security invoice for $6430.00 for the Kirk event. *Id*, ¶ 9. TP-UNM's willingness to pay similar, if not higher, security fees in the past coupled with the fact that TP-UNM continued to host events on campus serves as evidence that UNM's policies regarding security fees has not had a chilling effect on TP-UNM's speech.

Plaintiffs have provided no evidence suggesting that they might face consequences in the future under UNM's policies regarding security fees. They certainly have not established a "significant risk" that their organization's leadership might face consequences *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016). Speculation does not suffice to establish irreparable injury. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Plaintiffs have not provided *any* reason, even a speculative one, to establish that they might face constitutional consequences under UNM's policies. "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Further, it is well settled that when the injuries alleged by a plaintiff occurred in the past or are merely speculative, and could be remedied through money damages if the plaintiff were to ultimately prevail, a preliminary injunction is "unwarranted." *See Schrier v. Univ. Colo.*, 427 F.3d 1253, 1266-67 (10th Cir. 2005). Plaintiffs' alleged injuries concerning the security fees are merely

speculative, and could be remedied through money damages if Plaintiffs were to prevail on the merits, and thus, a preliminary injunction would not be proper. Ultimately, because Plaintiffs cannot show they will suffer irreparable injury if the requested injunction is denied, they are not entitled to a preliminary injunction.

      **C.    The Balance of Potential Harm to Plaintiffs Does Not Outweigh the Harm to Others if an Injunction Issues.**

The harm to the opposing party and the public interest generally merge when the Government is the opposing party, as in the present case. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs must demonstrate that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). The Tenth Circuit has indeed held that a state's ability to "enact and enforce measures it deems to be in the public interest is an equity to be considered in balancing hardships." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1191 (10th Cir. 2003). New Mexico has a "sovereign interest in being in control of, and able to apply, its laws throughout its territory." *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d at 476-77. The United States Supreme Court has held that any time a state is enjoined by a Court from effectuating statutes enacted by the representatives of the people, the state suffers a form of irreparable harm. *Maryland v. King*, 567 U.S. 1301, 1303 (2012). Law enforcement and public safety interests present additional issues when balancing the potential harm of an injunction. *See Id*. Issuance of the injunction would injure UNM's sovereign interest in enforcement of its policies. In addition, UNM's policies regarding security fees were developed to weigh the potential danger to its students and its facilities and to determine the number of law enforcement officers that may be required in any circumstance. UNM evaluates several factors in determining required security services for a special event including; an estimate of the number of attendees, the venue's size and location, the number of

entrances and exits, whether the event will be open to the public, whether there will be a ticketing process, length of time scheduled for the event, whether the event will occur during the day or evening, whether alcohol will be served and whether a fee will be charged for entry, goods, or services.  Policy 2230, Section 2.1, attached as Exhibit A to Stump Declaration.  UNM applies these factors to all special events, without considering the content or viewpoint of the speech at the planned event, to protect the people and property on its campus and to preserve human rights.  See Policy 2230, attached as Exhibit A to Stump Declaration.  Further, UNM hosts over 300 special events annually and the requested preliminary injunction would curtail UNM's ability to continue hosting such events, as they would pose a safety threat without the enforcement of Policy 2230.  *See* Stump Declaration, ¶¶ 15-20.  If UNM were not able to enforce Policy 2230, many events would likely have to be cancelled due to lack of security or no security.  Stump Declaration, ¶ 19.  UNMPD does not have the budget to handle staffing large events without the enforcement of Policy 2230.  Stump Declaration, ¶ 19.  However, UNMPD has a minimum personal requirement of four officers per shift.  Stump Declaration, ¶ 20.  Therefore, if UNM was unable to enforce its security fees under Policy 2230 for a large event requiring additional security, such as graduation, it is likely only four officers would be on shift to provide security and mitigate risk at the event, in addition to handling calls for service on campus.  Stump Declaration, ¶ 20.  This would increase risk to the safety and welfare of students, staff, faculty and the public.  Stump Declaration, ¶ 20.  Due to the public safety interests involved, the balance of potential harm to Plaintiffs is outweighed by the harm to others if an injunction issues.

      **D.**    **The Requested Injunction is Adverse to the Public Interest.**

Plaintiffs fail to show that a preliminary injunction is in the public interest.  Plaintiffs argue generally that it is always in the public interest to protect constitutional rights.  [MPI, p. 20].

Plaintiffs have not demonstrated that the balance of harms weighs in their favor. UNM's policies are narrowly tailored to meet UNM's compelling interests. UNM exercises its police powers to protect the safety and welfare rights of its students because public safety is a compelling state interest. It is clear that granting the requested relief would substantially injure New Mexico's sovereign interests, as it would restrain the state's exercise of its police powers. Granting the injunction would substantially injure UNM's sovereign interest in enforcing its policies and that is adverse to the public interest.

### E. Plaintiffs Fail to Show a Substantial Likelihood of Success on the Merits.

An injunction cannot issue because Plaintiffs have not established that they have a substantial-likelihood-of-success. The evidence presented thus far, at this early stage of litigation, cannot persuade the Court that the Plaintiffs are reasonably likely to establish that the Defendants violated their rights under the state constitution, the First Amendment and Fourteenth Amendment of the United States Constitution. The legal standard behind the substantial-likelihood-of-success prong is an exacting one, which dooms the MPI.

> The proper standard applicable to the substantial-likelihood-of-success prong is that the movant must (i) carry the burden of production, i.e., he or she must present a prima facie case; and (ii) make it reasonably likely -- beyond just being "not unreasonable" -- that the factfinder would actually find for the movant, i.e., that the movant would satisfy the burden of persuasion. The Court will always require the full first showing -- the plaintiff must present a quantum of evidence sufficient to survive a motion for directed verdict if it were presented at trial.

*Diné Citizens Against Ruining Our Env't v. Jewell*, 2015 U.S. Dist. LEXIS 109986, at *116 (*citation omitted*). "All courts agree that Plaintiff must present a prima facie case but need not show a certainty of winning." *Logan v. Public Employees Retirement Association*, 163 F. Supp. 3d 1007, 1033 (D.N.M. 2016) (quoting 11A Wright & Miller, supra, § 2948.3). "An appraisal of the possible outcome of the case on the merits is of particular importance when a court determines

in the course of balancing the relative hardships that one party or the other will be injured whichever course is taken on the Rule 65(a) application." *Id*. "However, the degree of likelihood of success is not determinative." *Id*. A preliminary injunction will not be issued if a plaintiff seems unlikely to win, unless a plaintiff demonstrates a strong probability of injury if the court fails to act. *Id*. Therefore, the balancing which takes place between the two factors is often referred to as a "sliding scale." *Id*.

The Court's formulation in *Logan* uses the same principles described above to arrive at similar results;

> [R]equiring the movant to fully carry the burden of production, and additionally present a likelihood, which will vary depending on the movant's showing on the other prongs, of carrying the burden of persuasion, constitutes the analytical framework for assessing a movant's satisfaction of the substantial-likelihood-of-success prong in the ordinary case.

*Logan v. Public Employees Retirement Association*, 163 F. Supp. 3d 1007, 1033 (D.N.M. 2016). Plaintiffs have not met this burden.

Plaintiffs have failed to show their claims that UNM's security fee policy is unconstitutionally vague and overbroad, and allows for viewpoint or content-based discrimination are likely to succeed on the merits. First, UNM's security fee policy, Policy 2230, provides "narrowly drawn, reasonable and definite standards" in determining the necessary security for any given event, as required by the First Amendment. *See Forsyth Cnty v. National Movement*, 505 U.S. 123, 133 (1992). Policy 2230 provides a complete list of factors that UNM evaluates for all events hosted by UNM, all of which concern the safety and welfare of the public. *See* Policy 2230, attached as Exhibit A to Stump Declaration. Further, the factors that UNM must rely on in Policy 2230 are all objective, preventing viewpoint and content-based discrimination. *See Forsyth*, 505 U.S. at 133. UNM evaluates and applies these factors the same to all organizations. Hosts of other

events at UNM are charged for the actual costs of security, just as TP-UNM was charged the actual cost of security. *See* Stump Declaration, ¶ 12. For example, the New Mexico Athletic Association was charged over $32,000.00 for security provided at the high school state basketball championships held over five days in March 2024. Stump Declaration, ¶ 12. Therefore, Plaintiffs cannot show that UNM's Policy 2230 is unconstitutionally vague and overbroad, and allows for viewpoint or content-based discrimination, and thus, cannot show that they are likely to succeed on the merits.

### III.     CONCLUSION

For the foregoing reasons, the requested injunction should not issue. If an injunction issues, a proper bond amount must be set.

Respectfully submitted,

WIGGINS, WILLIAMS & WIGGINS
A Professional Corporation

By */s/ Patricia G. Williams*
    Patricia G. Williams
*Attorneys for Defendants*
1803 Rio Grande Blvd., N.W. (87104)
P.O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400
pwilliams@wwwlaw.us

We hereby certify that on this 1st day of April 2024,
the foregoing was filed electronically through the
CM/ECF system, which caused all parties or counsel
of record to be served by electronic means, as more
fully reflected on the Notice of Electronic Filing.

WIGGINS, WILLIAMS & WIGGINS, P.C.

By     */s/ Patricia G. Williams*
          Patricia G. Williams