## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LEADERSHIP INSTITUTE and
TURNING POINT USA at the UNIVERSITY
OF NEW MEXICO,

     Plaintiff,


vs.                                                                                    No. 1:24-cv-187-DHU-JMR


GARNETT STOKES, in her official capacity
as President of the University of New Mexico,

JOSEPH SILVA, in his official capacity as
Chief of Police of the University of New
Mexico Police Department,

TIMOTHY STUMP, in his official capacity as
Lieutenant of the University of New Mexico
Police Department,

CHERYL WALLACE, in her official capacity
as Director of the Student Union Building at
the University of New Mexico,

DENNIS ARMIJO, in his official capacity as
Assistant Director of the Student Union
Building at the University of New Mexico, and

RYAN LINDQUIST, in his official capacity as
Director of the Student Activities Center at the
University of New Mexico,

     Defendants.


## MEMORANDUM OPINION AND ORDER

     This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction ("Motion

for Preliminary Injunction"), Doc. 5, and Defendants' Motion to Dismiss and Memorandum in

Support ("Motion to Dismiss").  Doc. 35.  The Court held a hearing on the Preliminary Injunction

Motion on July 11, 2024.  Doc. 44.  After carefully considering the motions, the attendant briefs, the parties' oral arguments, and being fully advised of the premises, the Court concludes that the Motion for Preliminary Injunction is **GRANTED** and Defendants' Motion to Dismiss is **DENIED**.

## I.
## Introduction

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. CONST. amend. I.   "At its core, 'the First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.' " *Matter Utah v. Njord,* 774 F.3d 1258, 1263 (10th Cir. 2014) (quoting *Boos v. Barry*, 485 U.S. 312, 318, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988))).   "[A]bove all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972).   "By incorporation through the Fourteenth Amendment, this prohibition applies to states and their political subdivisions." *Aptive Env't, LLC v. Town of Castle Rock,* 959 F.3d 961, 979 (10th Cir. 2020).   Importantly, "the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." *Healy v. James*, 408 U.S. 169, 180, 92 S.Ct. 2238, 2346, 33 L. Ed. 2d 266 (1972).

## II.
## Background

Plaintiffs Leadership Institute ("LI") and Turning Point USA at the University of New Mexico ("TP-UNM") allege that UNM's policies regarding security fees and free speech are unconstitutional and consequently deny Plaintiffs their "right to engage freely and openly in the marketplace of ideas."  Doc. 1 at 3, ¶ 12.  Plaintiffs allege five counts arising directly under the First Amendment and Fourteenth Amendment to the United States Constitution; the Civil Rights

Act of 1871, 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. § 2201; and Article II, Section 17 of the New Mexico Constitution. *See* Doc. 1 at 10, ¶ 60. Plaintiffs' allegations stem from UNM's security fees relating to public speaker, Riley Gaines, who was hosted by TP-UNM during an on-campus event on October 4, 2023. *See id*.

Plaintiffs began UNM's event request process for the Gaines speaking event on August 15, 2023. Doc. 5-1, Gonzales Decl. ¶ 16. Kenna Fleig, one of TP-UNM's co-presidents, submitted an event request form indicating that TP-UNM expected around 100 attendees for an event that would last 3.5 hours. *Id*. ¶¶ 17–18. The form noted that Ms. Gaines travels with her own security, and the students did not want to request additional security. *Id*. ¶ 19. A week later, TP-UNM received an email from UNM informing them that they were required to request and accept university security. *Id.* ¶ 20. TP-UNM filled out the security request form. *Id.* ¶ 21. A week later, UNM reached out again, this time to schedule a meeting for September 5. *Id.* ¶¶ 22–23. At that meeting, Defendant Stump of the UNM police department told TP-UNM that it would be required to pay for police security. *Id.* ¶ 25. Defendant Stump provided the students an invoice that listed the cost of security for the event as $10,202.50. *Id.* ¶ 28. That total included the costs associated with providing over thirty police officers, each working for 5.5 hours to cover a 3.5 hour, hundred-person event. *Id.* ¶¶ 18, 19, 28.

Defendants maintain UNM Administrative Policy 2230: Police and Security Services ("security fee policy"). *See* Doc. 1, Compl. ¶ 29; *see also* https://perma.cc/34LH-6REL. The security fee policy lists factors UNM will consider when determining an event's security needs, including the number of expected attendees, the size and location of the venue, the number of entrances and exits, and the time of day and length of the event. *See id.* ¶ 31. The security fee policy also states that the police department "regularly" updates a "schedule of charges based on

the factors" and that "[t]he basic cost of security according to this schedule will be charged to all groups[.]" *Id*. ¶ 32. When TP-UNM asked for clarification about where to find the published schedule of charges, Defendant Stump stated that the individualized, invoiced quote for $10,202.50 in security services was the schedule of charges. Doc. 5-1, Gonzales Decl. ¶ 33.

TP-UNM, Defendant Stump, and Defendant Wallace, Director of the Student Union Building on UNM campus, met on September 7, 2023, to discuss the possibility of a different space to host Ms. Gaines to keep security costs down. *Id.* ¶ 29. During the meeting, Defendant Stump stated that the quote of over $10,000 was for every officer UNM employed—thirty-three officers; nearly one for every three attendees the students expected. *Id.* ¶ 30. When TP-UNM asked why Defendant Stump intended to assign every officer to the Gaines event, and whether it was because of the speaker or the inviting organization, he responded that "it's all based on individual assessments," that they were looking at the "individual," and that "there is not a criteria [sic]." *Id.* ¶ 31. He also told the students that if an organization were to screen the Barbie movie in a venue on campus, he likely would not require even a single officer because the UNM police were "not worried about the Barbie movie." *Id.* ¶ 32. He then said that security was "consistent" in how it assessed fees "to Turning Point" in the past. *Id.* ¶ 31. He described past TP-UNM events featuring other conservative speakers that generated protests at UNM. *Id.* A few times during the meeting, he reiterated that UNM assesses security fees on a "case-by-case basis." *Id.*

In a third meeting with TP-UNM on September 18, 2023, Defendant Stump agreed to lower the security fees by cutting the officers' scheduled time from 5.5 hours to 4.5 hours. *Id.* ¶ 37. This resulted in a new quote for $7,420.00 in security fees. *Id.* ¶ 38. Defendant Stump also agreed to dismiss officers during the event when possible, again to keep costs down. *Id.* ¶ 37. He had previously informed TP-UNM's representatives that they needed to agree—in writing and in

advance—to pay the security fee invoice or else the event would be cancelled. *Id.* ¶ 26. LI issued a written statement via email agreeing to pay "reasonable security costs" for the event on behalf of the chapter. *See* Doc. 5-8, Clark Decl., Ex. 1.

Ms. Gaines visited the UNM campus on Wednesday, October 4, at 7:00 p.m. and spoke to a crowd of around 200 people until 9:00 p.m. Doc. 5-1, Gonzales Decl. ¶ 41. The event was open to members of the public; the tickets were free. Fewer than ten protestors showed up after the event started and demonstrated outside the event room. *Id.* ¶ 42. The demonstration was peaceful and non-disruptive. *Id.* ¶ 43. No police action was taken or needed. *Id.*

After Ms. Gaines' event, on October 9, 2023, Defendant Stump issued a final invoice to TP-UNM for the event totaling $5,384.75. *Id.* ¶ 44. According to the invoice, the university staffed twenty-seven officers at the event who charged for a total of 95.25 hours. *Id.* ¶ 45. Only four of the twenty-seven officers were stationed inside the event venue. *Id.* ¶ 46. Fifteen officers were stationed in other areas of the building or in nearby buildings; two officers roamed outdoor areas of campus on bike; three were stationed on a nearby rooftop; three were specifically designated as an "Arrest Team." *Id.* ¶¶ 47–48.

Plaintiffs have not yet paid the invoice. UNM Administrative Policy 5250: Use of University Facilities (facilities policy) states that the "[f]ailure to pay . . . security fees . . . may result in the immediate loss of scheduling privileges, possible disciplinary action, or possible legal action." Doc. 1 at ¶ 39; *see also* https://perma.cc/M9KJ-7KX3.  The members of TP-UNM fear that if the invoice is not paid, they will lose their scheduling privileges and charter, which will impact their right to host events and conduct other student organization business. Doc. 5-1, Gonzales Decl. ¶¶ 51–52. They fear that, as individuals, they could face disciplinary action, difficulties in finding a job after college, and a loss of scholarship opportunities. *Id.* ¶¶ 52–53. LI

likewise fears that it will be subject to legal action or otherwise lose privileges as a guest on campus. Doc. 5-7, Clark Decl. ¶ 20. And this is on top of Plaintiffs' shared concern that these fees will be required in the future and will prevent them from speaking or hosting speakers on UNM's campus. *See id.* ¶ 19; Gonzales Decl. ¶ 51.

Plaintiffs sued UNM for violating their freedom of speech under state and federal law. Doc. 1. In Count One of their Complaint, Plaintiffs alleged that the UNM security fee policy is facially vague and overbroad under the First Amendment because it gives university officials unbridled discretion to determine whether and how much security each event's organizers must pay for. *Id.* at ¶¶ 86–94. Although the security fee policy provides a non-exhaustive list of factors to consider when determining security services for an event, it does not explain how each factor impacts the amount of security required and does not include precise guidelines for administrators to follow when weighing the factors. *Id.* In Count Two, they alleged that UNM discriminated against their viewpoints in violation of the First Amendment when, based on the nature of the Gaines event and past TP-UNM events, it determined that TP-UNM must pay for an excessive amount of security to prevent an anticipated hostile reaction from others. *Id.* ¶¶ 95–103. In Count Three, they alleged that UNM unconstitutionally discriminated against the content of their speech when it assessed high security fees to Plaintiffs based on Ms. Gaines' topic. *Id.* ¶¶ 104–08. In Count Four, they alleged that the university's free speech policy is unconstitutional on its face because it only requires that university policies be "viewpoint-neutral," thus allowing university officials to impose content-based restrictions on speech as Defendants did here. *Id.* ¶¶ 109–14. And in Count Five, they alleged that the university violated Article II, Section 17 of the New Mexico Constitution for the same reasons. *Id.* ¶¶ 115–19. Plaintiffs requested nominal damages in

the amount of $1.00 and declaratory and injunctive relief against the policies and actions taken by UNM.

On February 29, 2024, Plaintiffs filed their Preliminary Injunction Motion, in which they requested a preliminary injunction "halting the enforcement of the security fee policy and the collection of payment for security fees related to the Gaines event."  Doc. 5 at 21.  Subsequently, on July 3, 2024, Defendants filed their Motion to Dismiss, arguing that this Court lacks subject matter jurisdiction over this matter due to the Plaintiffs' lack of standing.   Doc. 35 at 2.  Because the Court must first determine whether it has jurisdiction, it analyzes the Motion to Dismiss next.

**III.**
**Legal Analysis**

**A.  The Court denies Defendants' Motion to Dismiss because both LI and TP-UNM have standing.**

Defendants contend Plaintiffs do not have standing to bring the claims in this matter for several reasons.  First, Defendants argue that because LI did not have a contractual relationship with UNM regarding the security fees, and "simply agreed to pay reasonable security costs on behalf of TP-UNM [,] LI's rights could not have been violated by UNM's policies regarding security fees and free speech, and thus, LI does not have standing to bring claims against UNM." Doc. 35 at 3.  Second, Defendants argue that TP-UNM does not have standing because it is an unincorporated association, and as such, has no capacity to sue as a "person" under 42 U.S.C. § 1983.  *Id.* at 7-8.  Plaintiffs respond, in summary, that LI has standing because it suffered past injury and will likely suffer future injury, Doc. 43 at 2-10, and TP-UNM has standing because it is a registered and chartered student organization, not a common law unincorporated association, and is thus a "'person' within the meaning of 42 U.S.C. § 1983 capable of asserting both its own First Amendment rights and the First Amendment rights of its student members." Doc. 43 at 12.

7

Alternatively, Plaintiffs argue that if the Court finds that TP-UNM lacks standing, and that "LI's standing is not sufficient to allow Plaintiffs to proceed with all their claims under the one-plaintiff rule, Plaintiffs respectfully request leave to substitute [TP-UNM's co-president] as a plaintiff." *Id.* at 13.

### 1) Legal Standard

For plaintiffs to demonstrate standing, they must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, <u>as revised</u> (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)). A plaintiff must satisfy each element "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "At the preliminary injunction stage, then, the plaintiff[s] must make a 'clear showing' that [they are] 'likely' to establish each element of standing." *Murthy v. Missouri*, 144 S.Ct. 1972, 1977, 219 L. Ed. 2d 604, 617 (U.S. 2024) (quotation omitted). In a declaratory action, a party must assert a claim for relief that "if granted, would affect the behavior of the particular parties listed in his complaint." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011).

### 2) Leadership Institute and Turning Point-UNM have standing.

Defendants do not appear to argue that Plaintiffs' alleged injuries are not fairly traceable to the challenged conduct of the defendant or that they would not be redressed by a favorable judicial decision, so the only element at issue is whether Plaintiffs have demonstrated that they have suffered an injury in fact.

Generally, for the injury element, plaintiffs "seeking prospective relief must show more than past harm or speculative future harm." *Riggs v. City of Albuquerque,* 916 F.2d 582, 586 (10th

Cir. 1990).  "A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction." *Tandy v. City of Wichita*, 380 F.3d 1277, 123-84 (10th Cir. 2004).  "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014).

Significantly, "[t]he Supreme Court has recognized as an 'exception from general standing rules' facial challenges in the First Amendment context where the challenger asserts that the restriction is 'subject to facial review and invalidation' because it 'has the potential to chill the expressive activity of others not before the court.' " *Doe v. City of Albuquerque*, 667 F.3d 1111, 1123 n.7 (10th Cir. 2012) (quoting *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 129, , 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992)).  "Litigants who are being chilled from engaging in constitutional activity suffer a discrete harm independent of enforcement, and that harm creates the basis for our jurisdiction." *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) (internal quotation and citation omitted).  "[W]hen the threatened enforcement effort implicates First Amendment rights, the inquiry tilts *dramatically* toward a finding of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (emphasis added).

Here, LI has satisfied the injury element because it has shown that its speech is being chilled by the threatened enforcement of UNM's security fee policy, which is a sufficient harm for purposes of standing.  The Court agrees with Plaintiffs that the security fee policy chills LI's speech in several ways.  First, the policy places unbridled discretion in an official to decide whether to apply the policy at all, which amounts to a First Amendment injury under *Forsyth County*. 505 U.S. at 131.  Second, the policy lacks the kind of "narrowly drawn, reasonable and definite standards" that the Supreme Court requires, *id.* at 133, because there is no set schedule of fees and

instead security fees are determined in a less-than-transparent manner.  The record indicates that UNM maintains this policy, has not renounced its future enforcement, and defends its validity. Together, this means LI's speech is being chilled by the threatened enforcement of UNM's security fee policy, and this is sufficient for the Court to find an injury.  Therefore, because all three elements have been met, LI has standing.

Regarding the question of TP-UNM's standing, the Court agrees with Plaintiffs that the case may proceed if at least one plaintiff has standing.  Doc. 43 at 2.  "If at least one plaintiff has standing, the suit may proceed." *Biden v. Nebraska*, 143 S. Ct. 2355, 2365, 216 L.Ed.2d 1063 (2023) (citing *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52, n.2, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement.").  Because the Court has found that LI has standing, it also concludes TP-UNM's claims may also proceed under the one-plaintiff rule. Given this, the Court need not analyze the parties' additional arguments regarding standing. Defendants' Motion to Dismiss on the basis of lack of standing is denied.

## B. The Court grants Plaintiffs' Motion for Preliminary Injunction.

### 1) Legal Standard

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019) (citing *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888 (10th Cir. 1989)). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief *must be clear and unequivocal*." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (emphasis added) (citing *Wilderness Workshop v. U.S. Bureau of Land Mgmt.*, 531 F.3d 1220, 1224 (10th Cir. 2008)).

"In determining whether to grant a preliminary injunction, a court must weigh (1) the likelihood that the movant will succeed on the merits; (2) the threat of irreparable harm to the movant; (3) the relative weight of the harm alleged by the movant and the harm to the nonmoving party; and (4) the public interest." *Citizens United v. Gessler*, 773 F.3d 200, 209 (10th Cir. 2014). The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. *Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 1761, 173 L.Ed.2d 550 (2009). "Tenth Circuit decisions have linked the 'irreparable injury' inquiry to the 'likelihood of success' inquiry, holding that a plaintiff who cannot demonstrate a substantial likelihood of success is not entitled to a presumption of irreparable harm." *Logan v. Pub. Emps. Ret. Ass'n*, 163 F.Supp.3d 1007, 1030 (D.N.M. 2016) (Browning, J.) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1266 (10th Cir. 2005)). "In the First Amendment context, the likelihood of success on the merits will often be the determinative factor because of the seminal importance of the interests at stake. *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016) (internal quotation marks and citation omitted).

The movant for a preliminary injunction must satisfy a heightened burden if the requested preliminary injunction is one of three disfavored types "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc). These disfavored injunctions include: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits. *Id.* A party seeking a disfavored injunction must demonstrate a substantial likelihood of success on the merits and make a strong showing that the balance of harms tips in the movant's favor and the preliminary injunction is not adverse to the public interest. *Id.* at 980.

Defendants argue that Plaintiffs' requested injunction is disfavored because it attempts to alter the status quo and the requested relief affords the movant all the relief that it could recover at the conclusion of a full trial on the merits.  The Court need not decide this issue, because even if the heightened standard applies here, for the reasons discussed herein, Plaintiffs have met their burden. *See Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1071 (10th Cir. 2009) (declining to determine whether district court's injunction disrupted status quo between parties, because plaintiff met its burden even under heightened standard); *see also Diné Citizens*, 839 F.3d at 1283 (applying "substantial likelihood of success on the merits" standard for preliminary injunction).

2) **The preliminary injunction factors weigh in favor of the Court granting the Motion.**

a. **Plaintiffs have shown a substantial likelihood of success on the merits.**

The Court finds that the first factor weighs in Plaintiffs' favor because Plaintiffs have met their heightened burden of showing that they are likely to succeed on the merits of their claim that the security fee policy is unconstitutionally overbroad on its face.[1]  When a policy allows "appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted[.]" *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131, 112 S.Ct. 2395, 2401-2402, 120 L.Ed.2d 101 (1992).  In *Forsyth County,* the Court struck down a parade permit ordinance, finding:

---

[1] The Court need not determine whether Plaintiffs have demonstrated a likelihood of success on their other claims. *See George v. Davis Sch. Dist.*, No. 23-cv-00139, 2023 WL 5000989, at *6 (D. Utah Aug. 4, 2023) ("Where a plaintiff seeks a preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims.") (citation and internal quotation marks omitted).

> [t]he decision how much to charge for police protection or administrative time—or even whether to charge at all—is left to the whim of the administrator. There are no articulated standards either in the ordinance or in the county's established practice. The administrator is not required to rely on any objective factors. He need not provide any explanation for his decision, and that decision is unreviewable. Nothing in the law or its application prevents the official from encouraging some views and discouraging others through the arbitrary application of fees.

505 U.S. at 133. Moreover,

> the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance *preventing* him from doing so.

*Id.* at 133, n.10 (emphasis added).

Although the question in this case is closer than that in *Forsyth*, the Court nonetheless finds that Plaintiffs have demonstrated the security fee policy in this case is similar enough to render it overly broad.  Although the policy lists criteria for officials to consider when assessing event security, such as venue size and location,[2] the list ultimately leaves the decision of how much to charge for security up to the whim of university officials.  For example, the policy does not explain a method for determining how much more security is required for a small venue as compared to a large one, or for a daytime event as compared to a nighttime event.  Significantly, the policy states that the "basic cost of security…will be charged to all groups" based on a schedule of charges that the UNM Police Department has on its website, *id.* ¶ 32, but despite this, the department does not actually delineate the amount of this "basic cost of security."  Though the security fee policy also states that the police department "regularly" updates the "schedule of charges based on the factors" and that "[t]he basic cost of security according to this schedule will be charged to all groups," *see*

---

[2] *See* University of New Mexico Administrative Policy and Procedures Manual, Section 2230, available at https://perma.cc/34LH-6REL.

Compl. ¶ 32, there is no schedule of charges.  *See* Doc. 5-1, Gonzales Decl. ¶ 33 (indicating that Defendant Stump told TP-UNM that the individualized, invoiced quote for $10,202.50 in security services *was* the schedule of charges.).  Additionally, the preamble to the policy indicates that university officials "may" assess security fees but does not provide guidance for when they may or may not assess these fees, which contributes to the problem of allowing university officials overly broad discretion.  *See* July 11, 2024 Motion Hearing Transcript ("Mot. Hr'g Tr.") (Doc. 44) at 141:2-6.  In sum, Plaintiffs have shown a substantial likelihood of success on the merits of their overbreadth claim because the security fee policy does not contain limiting language that includes "narrowly drawn, reasonable and definite standards[.]" *Forsyth*, 505 U.S. at 133, and it does not include anything to prevent UNM administrators from exercising their discretion in a content-based manner.  *Id.* at 133, n.10.

### b.  Plaintiffs face irreparable harm.

Plaintiffs seeking a preliminary injunction must demonstrate that irreparable harm is likely in the absence of an injunction. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (quotations omitted). *Cf. Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

The Court has found that Plaintiffs have demonstrated a substantial likelihood of success on their overbreadth claim, therefore, they have met their heightened burden of showing an irreparable injury absent a preliminary injunction. *See Planned Parenthood Association of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) ("We in turn conclude that the likelihood that

PPAU will suffer a violation of its First Amendment rights if the Directive is left in place, standing alone, gives rise to an irreparable injury.")

Even still, Plaintiffs have shown that the deprivation of their constitutional rights through the existence of the security fee policy will cause them irreparable harm.  The security invoice for the Gaines event is $5,384.75.  Doc. 5-1, Gonzales Decl. ¶¶ 44-45.  UNM has not disclaimed a present or future intent to collect the security fees.  Doc. 15 at 7; *see Hill v. Williams*. No. 16-cv-2627, 2016 U.S. Dist. LEXIS 155460, at *27 (D. Colo. Nov. 4, 2016) (holding irreparable harm prong was satisfied for a preliminary injunction where government officials disclaimed present enforcement but maintained that they could constitutionally enforce the law against plaintiffs).

 If Plaintiffs do not pay the security fee invoice from UNM, they may be prohibited from holding future events or face other negative consequences because UNM's facilities policy states that failure to pay the security invoice could result "in the immediate loss of scheduling privileges, possible disciplinary action, or possible legal action." Compl. ¶ 39.  TP-UNM's members also may face disciplinary action.  Doc. 5-1, Gonzales Decl. ¶¶ 52–53.  All of this is sufficient for the Court to find Plaintiffs have satisfied their burden of establishing that they face irreparable harm.

### c.  The balance of harms and the public interest weighs in Plaintiffs' favor.

The harm to the opposing party and the public interest generally merge when the Government is the opposing party, as in the present case. *Nken*, 556 U.S. at 435.  "It is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012) (citations omitted).  The Court has considered the harm to the government, as a state's ability to "enact and enforce measures it deems to be in the public interest is an equity to be considered in balancing hardships." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1191 (10th Cir. 2003).  However, the Court must agree with Plaintiffs that the threatened

injury to Plaintiffs' First Amendment rights outweighs any harm to Defendants. *See Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (stating that when law is likely unconstitutional, interests of those the government represents, such as voters, do not outweigh plaintiff's interest in having his constitutional rights protected).

**IV.**
**Conclusion**

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion for Preliminary Injunction. (Doc. 5). Defendants are enjoined from enforcing the security fee policy vis-à-vis speech events[3] and the collection of payment for security fees related to the Gaines event.

_____

DAVID HERRERA URIAS
United States District Judge

_____

[3] This preliminary injunction does not apply to non-speech events, such as basketball or football games. *See* Mot. Hr'g Tr. 142 at 11-18 (Plaintiffs' counsel requesting that the preliminary injunction should only apply to speech events, not sports events).